SEYFARTH SHAW LLP
Timothy M. Hoppe (SBN 310999)
thoppe@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone:  (415) 397-2823
Facsimile: (415) 397-8549

Scott P. Mallery (SBN 283562)
smallery@seyfarth.com
400 Capitol Mall, Suite 2350
Sacramento, California 95814-4428
Telephone:  (916) 448-0159
Facsimile: (916) 558-4839

Attorneys for Defendant
HAWTHORN SENIOR LIVING, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| CAROL BALDWIN,<br><br>        Plaintiff,<br><br>   v.<br><br>HAWTHORN SENIOR LIVING, LLC; a Delaware corporation, and DOES 1-10,<br><br>        Defendants. | Case No.<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT PURSUANT TO DIVERSITY OF CITIZENSHIP**<br><br>[Riverside Superior Court Case No. CVPS2301702]<br><br>*[Filed concurrently with:*<br>*1.  Civil Case Cover Sheet;*<br>*2.  Notice of Interested Persons or Entities;*<br>*3.  Corporate Disclosure Statement;*<br>*4.  Declaration of Curtis Brody;*<br>*5.  Declaration of Timothy M. Hoppe*<br><br>Complaint Filed:  April 10, 2023 |

TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant Hawthorn Senior Living, LLC ("Defendant") hereby files this Notice of Removal pursuant to 28 U.S.C. sections 1332 and 1441(a) and (b), based on diversity of citizenship jurisdiction, in order to effectuate the removal of the above-captioned action from the Superior Court of the State of California, County of Riverside, to the United States District Court for the Central District of California, and states that removal is proper for the following reasons:

## I.    **BACKGROUND**

On April 10, 2023, Plaintiff Carol Baldwin ("Plaintiff") filed a Complaint in the Superior Court of the State of California, County of Riverside, entitled, *Carol Baldwin v. Hawthorn Senior Living, LLC, a Delaware corporation, and DOES 1 through 10,* designated as Case No. CVPS2301702.  In the Complaint, Plaintiff alleges ten causes of action against Defendant: (1) failure to pay wages under Labor Code §§ 204 and 210; (2) unpaid meal period premiums under Labor Code § 226.7; (3) unpaid rest period premiums under Labor Code § 226.7; (4) noncompliant wage statements under Labor Code § 226(a); (5) failure to maintain payroll records under Labor Code § 1174(d); (6) deficient pay penalties under Labor Code § 210; (7) unpaid overtime under Labor Code §§ 510 and 1198; (8) unfair competition under Business and Professions Code § 17200; (9) violation of one day of rest every seven days under Labor Code §§ 551 and 552; and (10) liquidated damages under Labor Code § 1194.2.

On April 20, 2023, Defendant's registered agent received a copy of the Summons and Complaint via mail.  True and correct copies of the Summons, Compliant, and Civil Cover Sheet received by Defendant is attached as **Exhibit 1** (hereinafter "Compl.").

On May 17, 2023, Defendant filed an Answer to the Complaint in Riverside County Superior Court.  A true and correct copy of Defendants' Answer filed in Riverside County Superior Court is attached as **Exhibit 2**.

Exhibits 1 and 2 constitute all of the pleadings received by Defendant and/or filed

by Defendant in the state court action prior to filing this Notice of Removal.  (Declaration of Timothy M. Hoppe ("Hoppe Decl.") ¶ 3.)  There are no pending hearings currently scheduled in the Riverside County Superior Court in the state court action besides a case management conference on October 11, 2023.  (*Id*.)

## II.   <u>TIMELINESS OF REMOVAL</u>

This notice of removal is timely as it is filed less than one year from the date this action was commenced and within thirty days of the service of the Summons and Complaint upon Defendant.  28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 119 S. Ct. 1322 (1999) (thirty-day deadline to remove commences upon service of the summons and complaint).  (Exhibit 1.)

## III.   <u>JURISDICTION BASED ON DIVERSITY OF CITIZENSHIP</u>

The Court has original jurisdiction of this action under 28 U.S.C. section 1332(a)(1).  As set forth below, this action is removable pursuant to 28 U.S.C. section 1441(a) as the amount in controversy is in excess of $75,000, exclusive of interest and costs, and is between citizens of different states.

**Plaintiff's Citizenship**.  "An individual is a citizen of the state in which [s]he is domiciled . . . ."  *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001)).  For purposes of diversity jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed.  *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).  Evidence of continuing residence creates a presumption of domicile.  *Washington v. Havensa LLC*, 652 F.3d 340, 345 (3d Cir. 2011).

At the time Plaintiff filed this civil action, Plaintiff was a resident of the State of California.  (Compl. ¶ 1.)  Specifically, Plaintiff alleges that she "is a resident of Indio in Riverside County, California."  (*Id.*)  Further, Plaintiff's home address on file during her employment with Defendant was within the State of California.  (Declaration of Curtis Brody ("Brody Decl.") ¶ 3.)

95016994v.1

**Defendant's Citizenship.**  In a removal, a limited liability company is treated as a partnership for purposes of diversity, and citizenship depends on the citizenship of its members.  *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  A corporation is deemed to be a citizen of any state in which it has been incorporated and of any state where it has its principal place of business.  28 U.S.C. § 1332(c)(1).  The "principal place of business" for the purpose of determining diversity subject matter jurisdiction refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities . . . . [I]n practice it should normally be the place where the corporation maintains its headquarters-provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings[.]"  *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93, 130 S.Ct. 1181, 1192 (2010).

Hawthorn Senior Living, LLC is, and was at the time this action was initiated, a limited liability company organized and existing under the laws of the State of Delaware, with its corporate headquarters—where its high-level officers work, direct, control, and coordinate the corporation's activities—located in Vancouver, Washington.  (Brody Decl. ¶ 5.)  Hawthorn Senior Living, LLC's members are Hawthorn Executive Corp. and CP HSL Holdings, LLC.  (*Id.*)

Hawthorn Executive Corp. is and was at the time the civil action was instituted a corporation organized under the laws of Washington.  (*Id.* at ¶ 6.)  Further, Hawthorn Executive Corp.'s headquarters—where its high-level officers work direct, control, and coordinate the corporation's activities—is located in Vancouver, Washington.  (*Id.*)  Thus, Hawthorn Executive Corp. is a citizen of Washington.

CP HSL Holdings, LLC is and was at the time the civil action was instituted a corporation organized under the laws of Delaware.  (*Id.* at ¶ 7.)  Its principal place of business is in Seattle Washington, which is where its operations are controlled, coordinated and directed.  (*Id.*)  Further, none of CP HSL Holdings, LLC's members are residents of California.  Each has its place of incorporation outside of California, and

3

95016994v.1

none has its corporate headquarters in the state.  (*Id.*)

Accordingly, because all members of Hawthorn Senior Living, LLC are citizens of states other than California, Defendant is also not a citizen of the State of California. Thus, the requisite diversity of citizenship exists as to Defendants.  *See* 28 U.S.C. § 1332(c)(1).

Further, in compliance with 28 U.S.C. section 1441(b), "none of the parties in interest properly joined and served as defendants is a citizen of the State in which [this] action is brought."  Pursuant to 28 U.S.C. section 1441(a) the citizenship of defendants sued under fictitious names shall be disregarded.  The inclusion of "Doe" defendants in Plaintiff's state court complaint has no effect on removability.  *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998); 28 U.S.C. § 1441 (a) (stating that for purposes of removal, the citizenship of defendants sued under fictitious names shall be disregarded).  In determining whether diversity of citizenship exists, only the named defendants are considered.  *Id*.

**Amount in Controversy.**  While Defendant denies any liability as to Plaintiff's claims, the amount in controversy requirement is satisfied because "it is more likely than not" that the amount exceeds the jurisdictional minimum of $75,000.  28 U.S.C. § 1332(a)(1).  As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint."  *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that the Court may consider facts presented in the removal petition).  In determining the amount in controversy, the Court must consider the aggregate of general damages, special damages, punitive damages, and attorneys' fees.  *Galt G/S v. JSS Scandinavia*, 142 F. 3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory); *see also Bank of Calif. Nat'l Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972).  As the Supreme Court has explained, "a defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart*

4

*Cherokee Basin Operating Co.*, LLC v. Owens, 135 S. Ct. 547, 553-54 (2014) ("[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."); *see also Valdez*, 372 F.3d at 1117 ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").  Defendant is not obligated to "research, state, and prove the plaintiff's claims for damages."  *Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (quoting *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008)); *Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (noting that the inquiry is "what is in controversy" by the plaintiff's complaint, not what a defendant will actually owe).

The calculations below supporting the amount in controversy are based on Plaintiff's *potential* recovery based on the Complaint's allegations (along with other documents as identified herein), assuming, without any admission, the truth of any of the allegations, and assuming liability (which is disputed) based on Plaintiff's theory of recovery.

**Plaintiff's Allegations.**  Plaintiff alleges that she worked as a Community Sales Associate for Defendant from September 9, 2019 to June 30, 2022.  (Compl. ¶ 9.)  This amounts to approximately 147 workweeks.  (Hoppe Decl. ¶ 4.)  According to Plaintiff, she worked Tuesday to Saturday each week from 9 a.m. to 6 p.m.  (Compl. ¶ 18.)  She also allegedly worked six and even seven consecutive days "on occasion".  (*Id.*)  For this work, Plaintiff alleges that she "was paid annualized compensation of $50,000".  (*Id.*)[1]

Plaintiff's Complaint turns on her belief that Defendant misclassified her as exempt under California law between September 9, 2019 and June 30, 2022.  (Compl. ¶ 12.)  Accordingly, Plaintiff's damages will depend on, among other things, her regular

---

[1] //   Defendant disputes Plaintiff's allegations related to her salary.  When she became a salary exempt Community Sales Associate in 2019, she earned an annualized salary of $50,000.  (Brody Decl. ¶ 4.)  This, however, increased each year Plaintiff worked for Defendant.  (*Id.*)  Regardless, even taking Plaintiff's allegations as true, Plaintiff's damages satisfy the amount in controversy for diversity jurisdiction.

DEFENDANT'S NOTICE OF REMOVAL PURSUANT TO DIVERSITY OF CITIZENSHIP

rate of pay during this period of time.  For salaried employees, California determines the regular rate of pay by dividing the weekly salary by the number of non-overtime hours worked during the week.  *See* Lab. Code § 515(d)(1) ("the employee's regular hourly rate shall be 1/40th of the employee's weekly salary").  Here, at least according to Plaintiff's allegations, she earned a weekly salary of $961.54, which amounts to a regular rate of pay of approximately $24.04 ($50,000 [Plaintiff's alleged annual salary] / 52 [weeks per year] / 40 [straight time hours allegedly worked in each workweek]).

***Unpaid Meal/Rest Breaks.***  As outlined above, Plaintiff seeks recovery for alleged (1) failure to provide meal periods, and (2) failure to provide rest breaks.  (Compl. ¶ 22-23; 34-61.)  Pursuant to California Labor Code § 226.7, the money owed for a meal period not provided as required by the applicable California Wage Order is one hour of an aggrieved employee's regular rate of pay for each day that a meal period is not provided.  Similarly, the money owed for each rest period not provided as required by California law is one hour of an employee's regular rate of pay per day for each day that a rest break is not provided.

Here, Plaintiff alleges that Defendant never provided Plaintiff uninterrupted meal or rest periods during her employment.  (Compl. ¶¶ 22-23.)  She claims that she worked five days each week from Tuesday to Saturday.  (Compl. ¶ 18.)  Plaintiff also alleges that she occasionally worked six and sometimes seven days in a week.  (*Id*.)  As noted above, between September 9, 2019 and June 30, 2022, Plaintiff worked approximately 147 workweeks.  This amounts to 735 workdays during the schedule Plaintiff allegedly worked (Tuesday through Saturday) (147 workweeks x 5 days per week).  If, as Plaintiff alleges, she occasionally worked a sixth and even a seventh day in a week, Plaintiff could reasonably have worked at lease one additional day in about a quarter of the workweeks she worked for Defendant (147 [workweeks] / 4 = 36.75 [weeks in which Plaintiff may have occasionally worked 6 or 7 days per week]).  Thus, conservatively, Plaintiff alleges that she worked approximately 771.75 days for Defendant between September 9, 2019 and June 30, 2022 ((147 [workweeks] x 5 [days in normal schedule])+(36.75 [additional

DEFENDANT'S NOTICE OF REMOVAL PURSUANT TO DIVERSITY OF CITIZENSHIP

95016994v.1

workdays worked based on Plaintiff's allegations that she worked six and seven days on occasion])).

Assuming one violation per day for failure to provide a meal period and one violation per day for failure to provide a rest break during the period Plaintiff alleges she worked for Defendant as a salaried employee, the total amount in controversy for Plaintiff's meal and rest break claims are **$37,105.74** (771.75 [workdays without a meal and rest break] x 2 [hours per day for the meal and rest break premiums] x $24.04 [regular rate of pay]).

**Overtime Compensation.**  Plaintiff separately alleges that Plaintiff was misclassified as exempt from California's overtime requirement and was regularly scheduled to work and in fact worked in excess of eight hours per workday and/or in excess of forty hours per workweek without receiving overtime compensation.  (Compl. ¶ ¶ 80-89.)

Plaintiff alleges that she "frequently worked overtime", alleging that during each workday she worked from 9 a.m. to 6 p.m.  (Compl. ¶ 18.)  If true, this would entitle Plaintiff to at least 1 hour of overtime each day under California's daily overtime provision.  *See* Labor Code § 510.  Plaintiff's alleged overtime rate is $36.06 (24.04 x 1.5), which amounts to $26,504.10 in overtime damages.

As noted above, Plaintiff also alleges that she occasionally worked six and even seven days a week.  (Compl. ¶ 18.)  This would entitle Plaintiff to overtime for all hours worked on the sixth or seventh day under California's weekly overtime rules because she would have worked over 40 hours in the week.  *See* Labor Code § 510.  Again, assuming that Plaintiff worked on a sixth or seventh day a quarter of the weeks she worked for Defendant, this would amount to another 36.75 days during which Plaintiff would be entitled to overtime for all hours worked.  If Plaintiff worked on average 4 hours on these additional days, she would be entitled to another $5,300.82 in overtime (36.75 [sixth and seventh days worked] x 4 [hours worked] x $36.06 [overtime rate]).

Thus, assuming that Plaintiff worked 9 hours each day, as she alleges, and worked

7

4 hours in excess of 40 in a week for 36.75 days, the amount in controversy at issue as to Plaintiff's overtime claim is **$31,804.92**.

**Penalty for Failure to Make Payments.** Plaintiff seeks to recover penalties under Labor Code sections 210 and 204 for Defendant's alleged failure to timely pay Plaintiff all of her wages due. For Labor Code section 204 violations (failure to pay all wages due semimonthly), Labor Code section 210 requires an employer to pay $100 for the first violation and $200 for each subsequent or willful violation, plus 25% percent of the amount withheld. *See* Lab. Code §§ 210 and 204.

Here, Plaintiff alleges that she was not paid all of the wages due to her each pay period. Between September 9, 2019 and June 30, 2022, there were approximately 69 pay periods. (Hoppe Decl. ¶ 5.) Accordingly, Plaintiff seeks penalties in the amount of $13,700 ($100 [initial violation] + 68 [pay periods involving an alleged subsequent violation] x $200 [subsequent / willful violation]).

Plaintiff also seeks 25% of the wages allegedly withheld from her. As outlined above, Plaintiff alleges that she was not paid overtime and break premiums, both of which may constitute wages under California law. *See Naranjo v Spectrum Security Services, Inc., 1*3 Cal.5th 93 (2022) (holding that meal and rest break premiums constitutes "wages" under California law). Accordingly, Plaintiff will likely seek an additional 25% of both the overtime and break premiums she alleges are due to her. This penalty amounts to $17,227.67 ($31,804.92 [overtime] + $37,105.74 [break premiums] x 0.25).

The amount in controversy at issue as to Plaintiff's Labor Code § 210 claim in this lawsuit is at least **$30,927.67** ($17,227.67 [25% penalty] + 13,700 [$100 / $200 penalty per pay period]).

**Wage Statement Penalties**. Plaintiff also alleges violations of California's wage statement requirements, including those under Labor Code §§ 226, and 1174 for purported failure "to provide [Plaintiff] with complete and accurate wage statements." (Compl. ¶ 64.) Under these provisions, Plaintiff may recover penalties for alleged

8

violations of California Labor Code § 226(a).  The statute of limitations for recovery of penalties under Labor Code §226 is one year.  Cal. Civ. Proc. Code §340(a).  California Labor Code §226(e) provides that damages are the greater of all actual damages or $50 for the first violation and $100 for every violation thereafter, per employee, up to $4,000.

Here, Plaintiff filed her Complaint on April 20, 2023.  Therefore, based on the statute of limitations, Plaintiff may be able to recover damages from April 10, 2022 to June 30, 2022, when she allegedly stopped working for Hawthorn.  This amounts to approximately **$450** in damages ($50 for the first pay period + $100 for the four additional pay periods during the statute of limitations period).

The total amount in controversy based on the allegations concerning unpaid meal and rest break premiums, unpaid overtime wages, penalties under Labor Code section 210, and wage statement violations is at least **$100,288.33**, which is in excess of the $75,000 required for diversity jurisdiction.[2]

**Attorney's Fees.**  Plaintiff claims statutory entitlement to attorney's fees. (Compl., Prayer for Relief, No. 6.)  Attorney's fees are properly considered in calculating the amount-in-controversy for purposes of removal on grounds of diversity jurisdiction. *Galt*, 142 F.3d at 1156 (claims for statutory attorney's fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory).  The amount of attorneys' fees for purposes of amount in controversy calculations is the expected reasonable attorneys' fees **through trial**.  *Fritsch v. Swift Transp.*, 899 F. 3d 785, 794 (9th Cir. 2018) ("a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met.").

Defendant anticipates that the Parties will propound written discovery, that

---

[2] //   Plaintiff's pre-litigation demand letter supports this conclusion.  On January 17, 2023, Counsel for Plaintiff sent Defendant a letter outlining her claims against Defendant and her estimates with respect to damages.  For the wage and hour claims asserted in the Complaint and demand letter, Plaintiff estimated her damages as approximately $86,800 in the demand letter.  (Hoppe Decl. ¶ 6.)

depositions will be taken in this case, and that Defendant will file a Motion for Summary Judgment or Partial Summary Judgment. (Hoppe Decl. ¶ 7.) Here, if Plaintiff prevails, she could be entitled to an award of attorneys' fees that alone are "more likely than not" to exceed $75,000, as is typical in employment cases. Indeed, Courts have awarded attorney's fees above the $75,000 requirement for cases involving overtime allegations. *See, e.g., Jaffe v. UHS-Corona Inc., JVR No. 1405150066*, 2013 WL 8509821 (Riverside County Sup. Ct.) (awarding attorney fees of $160,000 in case including failure to pay overtime wages). Thus, attorneys' fees alone are likely to exceed the amount in controversy. S*ee also Vasquez v. Del Rio Sanitarium Inc*, 2011 WL 8186703 (Los Angeles County Sup. Ct.) (awarding $75,000 attorney fees in retaliation and wrongful termination action). Plaintiff's amount in controversy requirement will likely be met by an award of attorney fees.

 In sum, Plaintiff's aggregated recovery on her claims, including unpaid wages, penalties, and attorney's fees, satisfies the $75,000 jurisdictional threshold. While Defendant vehemently denies any liability as to Plaintiff's claims, it is "more likely than not" that the alleged amount in controversy in this action exceeds $75,000, exclusive of interest and costs, as required by 28 U.S.C. section 1332(a).

 Because diversity of citizenship exists between Plaintiff and Defendant, and the matter in controversy between the Parties exceeds $75,000, this Court has original jurisdiction of the action pursuant to 28 U.S.C. section 1332(a)(1), and removal is proper.

## IV. <u>VENUE</u>

 Venue lies in the United States District Court for the Central District of California, pursuant to 28 U.S.C. sections 84(c)(2), 1441, and 1446(a) because this action originally was brought in the Superior Court of the State of California, County of Riverside. In addition, the action arose in the County of Riverside. (Compl. ¶ 10.) Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

95016994v.1

V.    **NOTICE OF REMOVAL TO PLAINTIFF AND THE SUPERIOR COURT**

      Pursuant to 28 U.S.C. section 1446(d), written notice of the filing of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California, County of Riverside.

VI.   **PRAYER FOR REMOVAL**

      Wherefore, Defendant prays that this civil action be removed from the Superior Court of the State of California, County of Riverside to the United States District Court for the Central District of California.

DATED: May 17, 2023             Respectfully submitted,

                          SEYFARTH SHAW LLP

                          By: */s/ Timothy M. Hoppe*
                              Timothy M. Hoppe
                              Scott P. Mallery
                              Attorneys for Defendant
                              HAWTHORN SENIOR LIVING, LLC

95016994v.1